Filed 10/17/22  Pote v. Handy Technologies CA2/7
Opinion after vacating opinion filed on 8/16/21

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

|  |  |
|---|---|
| PATRICK POTE, | B302770 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. BC723965) |
| HANDY TECHNOLOGIES, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, C. Edward Simpson, Judge.  Affirmed.

Manatt, Phelps & Phillips, Robert H. Platt, Andrew L. Satenberg and Benjamin G. Shatz for Defendant and Appellant.

Gibbs Law Group, Steven M. Tindall and Amanda M. Karl for Plaintiff and Respondent.

_____

Handy Technologies, Inc. (Handy) appeals the denial of its motion to compel arbitration on an individual (nonrepresentative) basis of the claims alleged in Patrick Pote's lawsuit under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). In our original opinion we affirmed the superior court's order based on *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360, 388-389 (*Iskanian*), which primarily held the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) did not preempt state law that prohibits waiver of PAGA representative actions in an employment contract. After the California Supreme Court denied Handy's petition for review (*Pote v. Handy Technologies, Inc.* (Nov. 10, 2021, S302770)), the United States Supreme Court granted Handy's petition for writ of certiorari, vacated the judgment and ordered the case remanded to this court for further consideration in light of its decision in *Viking River Cruises, Inc. v. Moriana* (2022) 595 U.S. ___ [142 S.Ct. 1906] (*Viking River*), which held the FAA preempted what *Viking River* characterized as *Iskanian*'s secondary indivisibility rule, which precluded dividing an action into an employee's arbitrable "individual PAGA claim[s]" (defined in *Viking River* to mean "claims based on code violations suffered by the plaintiff") and nonarbitrable nonindividual PAGA claims premised on code violations suffered by other allegedly aggrieved employees. (*Viking River*, at pp. 1916-1917, 1924.)

*Viking River* does not require reversal of the order denying Handy's motion to compel arbitration. Under *Viking River* state courts cannot prohibit arbitration, based on the indivisibility rule, of what the Supreme Court designated as an individual PAGA claim if the parties have agreed to arbitrate those claims. Here, however, the parties excluded all of Pote's representative

claims for civil penalties (whether individual for violations Pote suffered or nonindividual for violations suffered by other allegedly aggrieved employees) from arbitration: The arbitration agreement expressly provides no representative claim of any sort, specifically including any representative claim for civil penalties, is subject to arbitration. Although the agreement provides for arbitration of claims for recovery of underpaid wages, there is nothing here to arbitrate because Pote has agreed to dismiss that portion of his complaint seeking to recover unpaid or underpaid wages.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Pote's Complaint and First Amended Complaint*

On October 3, 2018 Pote filed a complaint and on November 19, 2018 the operative first amended complaint alleging causes of action against Handy under PAGA and for declaratory relief. Pote alleged he had been employed as a house cleaner for Handy since April 2018; he and other service providers cleaned and repaired clients' houses for flat rates per job; and Handy's flat rate payment policy resulted in Pote and other providers not being paid for overtime, missed rest and meal breaks, expenses and travel time to and between jobs in violation of various Labor Code provisions. He sought civil penalties under PAGA for those alleged Labor Code violations, which affected Pote and other California service providers.

Pote also alleged that, at the time he was hired and as a mandatory condition of his employment, Handy required him to agree to a Service Professional Agreement containing provisions purporting to prohibit the pursuit of a representative PAGA action for underpaid wages in any forum. Pote sought a declaration those provisions were void as against public policy.

3

2. *Handy's Motion To Compel Arbitration*

On March 26, 2019 Handy moved to compel arbitration and to stay litigation. Contending *Iskanian* was irreconcilable with the subsequent United States Supreme Court decision in *Epic Systems Corp. v. Lewis* (2018) 584 U.S. ___ [138 S.Ct. 1612], Handy argued the parties had entered into a mutual agreement to arbitrate that was valid and enforceable and required Pote's claims for "victim-specific unpaid wages"[1] under PAGA and for PAGA civil penalties to be arbitrated on an individual (nonrepresentative) basis. With regard to the PAGA civil penalties claims, Handy asserted it was a "legal fiction" that those claims belonged to the State of California and the civil penalties claims could thus be arbitrated in a nonrepresentative manner apart from the State. Handy further requested that, if the court were to decline to enforce the representative action waiver in its entirety, the court sever and stay Pote's claims for PAGA civil penalties, which Handy expressly contrasted with Pote's claims for victim-specific relief on behalf of himself and other allegedly aggrieved employees, until the completion of arbitration on the victim-specific claims.

In support of its motion Handy filed the declaration of Bailey Carson, a Handy senior vice-president. Carson averred Handy was a New York-based technology company offering an online platform allowing individuals seeking cleaning services to connect with professionals providing those services. Gaining access to Handy's platform required a cleaning professional to agree to Handy's Independent Contractor Acknowledgment (Acknowledgment) and the Service Professional Agreement.

---

[1]     We omit unnecessary underlining of text.

Carson's review of Handy's business records showed that on April 9, 2018 Pote had logged into Handy's application for mobile devices. By checking boxes and selecting "Confirm" or "Accept" buttons, Pote accepted the Acknowledgment, which was comprised of nine bullet points, and the Service Professional Agreement.

Carson's declaration included images of what he described as screenshots depicting how the Acknowledgment's nine bullet points appeared in Handy's mobile device application. One of the nine bullet points stated, "I understand that the Handy Service Professional Agreement contains a Mandatory and Exclusive Arbitration provision which requires Handy and me to submit disputes to final and binding arbitration."

Carson explained Pote could not have gained access to Handy's online platform without checking the box that stated, "I agree to the Service Professional Agreement" or without selecting the "Accept" button in Handy's mobile device application. Carson declared Pote had accepted the Service Professional Agreement on April 9, 2018 and attached the agreement as an exhibit to his declaration.

Section 12.2 of the April 9, 2018 agreement, titled "Mutual Arbitration Provision," provided, in its introductory paragraphs (in typeface containing all capital letters), "Handy and Service Professional mutually agree to waive their respective rights to the resolution of disputes in a court of law by a judge or jury and agree to resolve any dispute in arbitration . . . . [¶] . . . [¶] Except as expressly provided below, all disputes and/or claims between you and Handy shall be exclusively resolved in binding

arbitration on an individual basis; class arbitrations and class actions are not permitted."[2]

Section 12.2(c), titled "Representative Action Waiver— Please Read," provided, "Handy and Service Professional mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as a representative action, including but not limited to, a private attorney general action, and an arbitrator shall not have any authority to arbitrate a representative action, including, but not limited to, a private attorney general action ('Representative Action Waiver'). Private attorney general representative actions brought on behalf of the state under the California Labor Code are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law, but any claim brought by Service Professional for recovery of underpaid wages (as opposed to representative claims for civil penalties) under the California Labor Code shall be arbitrable, and must be brought, if at all, on an individual basis in arbitration as set forth in this Mutual Arbitration Provision."

Carson also explained, when Handy changed the Acknowledgement or Service Professional Agreement, the service professional had to confirm and accept the new terms in Handy's mobile application. On October 26, 2018 Pote accepted updated versions of the Acknowledgment and the Service Professional Agreement.

Carson stated the October 26, 2018 agreement was "substantially similar" to the April 9, 2018 agreement, with

---

[2]    The Mutual Arbitration Provision also stated it was governed by the FAA and survived termination of the agreement.

6

"minor changes" to the arbitration provision. The referenced excerpts of section 12.2's introductory paragraphs remained the same. As for section 12.2(c), containing the Representative Action Waiver, the entire paragraph now read, "Handy and Service Professional mutually agree that by entering into this agreement to arbitrate, both waive their right to have any dispute or claim brought, heard or arbitrated as a representative action, and an arbitrator shall not have any authority to arbitrate a representative action ('Representative Action Waiver'). Notwithstanding the foregoing, private attorney general representative actions brought prior to the effective date of this Agreement on behalf of the state under the California Labor Code are not arbitrable, not within the scope of this Agreement and may be maintained in a court of law, but any claim brought by Service Professional for recovery of underpaid wages (as opposed to representative claims for civil penalties) under the California Labor Code shall be arbitrable, and must be brought, if at all, on an individual basis in arbitration as set forth in this Mutual Arbitration Provision."

3. *Pote's Opposition and Handy's Reply*

On April 8, 2019 Pote filed an opposition to Handy's motion to compel arbitration, arguing the Representative Action Waiver was unenforceable under *Iskanian*, *supra*, 59 Cal.4th 348. Pote also asserted that Handy had mistakenly construed his PAGA claims as seeking damages for unpaid wages in addition to civil penalties under PAGA, which would be apportioned, as with all PAGA penalties, 75 percent to the California Labor and Workforce Development Agency (LWDA) and 25 percent to the employees. In his supporting declaration Pote's attorney averred Pote was limiting his claims to PAGA representative claims

7

seeking civil penalties, including purported civil penalties in the amount of unpaid wages under Labor Code section 558,[3] on behalf of the State of California.

On October 10, 2019 Pote filed a notice of new authority stating that, on September 12, 2019, the California Supreme Court decided *ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175. In that case the Supreme Court addressed Labor Code section 558, which before enactment of PAGA gave the Labor Commissioner authority to issue overtime violation citations for a civil penalty consisting of a fixed statutory amount ($50 for the first violation; $100 for subsequent violations) for each underpaid employee for each pay period an employee had been underpaid "in addition to an amount sufficient to recover underpaid wages" (see footnote 3, above). The *ZB* Court held the civil penalties a private plaintiff could seek through a PAGA action did not include underpaid wages: "[T]his amount—understood in context—is not a civil penalty that a private citizen has authority

---

[3]    Labor Code section 558, subdivision (a), provides an employer guilty of an overtime violation is "subject to a civil penalty as follows: [¶] (1) for any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. [¶] (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages."

Pote's cause of action for PAGA civil penalties as alleged in his first amended complaint sought recovery of both fixed statutory amounts and amounts sufficient to recover unpaid wages for Handy's alleged Labor Code violations as to Pote and other aggrieved service providers.

to collect through the PAGA." (*ZB*, at p. 182.) Pote's notice explained, by virtue of this new authority, Pote no longer sought to recover unpaid wages as part of his representative PAGA action and agreed to dismiss that portion of his complaint.

On October 10, 2019 Handy filed its reply in support of its motion. Handy argued, even assuming *Iskanian*, *supra*, 59 Cal.4th 348 remained good law, the case only held a predispute waiver of the right to assert a PAGA claim on a representative basis was unenforceable but the Representative Action Waiver was a postdispute waiver: Pote, while represented by counsel, agreed to the Representative Action Waiver on October 26, 2018 after Pote had initiated the dispute, as required by Labor Code section 2699.3, by notifying the LWDA and Handy in September 2018 of Handy's alleged violations of specific provisions of the Labor Code and of Pote's intent to file an action under PAGA against Handy; and Pote reaffirmed his assent to that waiver on November 25, 2018 (the expiration date under the October 26, 2018 agreement of a 30-day window to opt out of the Mutual Arbitration Provision).[4] Handy also argued, even if the waiver were determined to be unenforceable as to the civil penalties, Pote's first amended complaint alleged claims for victim-specific unpaid wages as to Pote and other aggrieved employees that were subject to individual arbitration regardless of whether Pote had labeled them PAGA civil penalty claims: The California Supreme Court, Handy asserted, had determined unpaid wages were not recoverable as PAGA civil penalties.

---

[4] In the trial court the parties agreed Pote first pleaded a PAGA claim in his November 19, 2018 first amended complaint. The original complaint is not included in the record on appeal.

### 4. *The Superior Court's Order*

The superior court denied Handy's motion. Stating the parties' main disagreement was whether the Representative Action Waiver was enforceable, the court concluded *Epic Systems Corp. v. Lewis, supra,* 138 S.Ct. 1612 did not invalidate the holding in *Iskanian, supra,* 59 Cal.4th 348 that an employee's right to bring a representative PAGA action is unwaivable. Accordingly, the court ruled, under *Iskanian* the Representative Action Waiver was unenforceable. The court declined to consider Handy's contention the Representative Action Waiver was a postdispute waiver and thus enforceable because Handy had raised that argument for the first time in its reply brief. Finally, the court rejected Handy's argument that Pote's PAGA claims for damages in the form of unpaid wages on behalf of affected workers should be compelled to individual arbitration, finding Pote had not brought any such victim-specific claims.

## DISCUSSION

### 1. *Iskanian*

*Iskanian* concerned an employee who sought to bring a class action on behalf of himself and similarly situated employees for the employer's alleged failure to compensate its employees for overtime and meal and rest breaks. The employee had entered into an arbitration agreement waiving the right to class actions. The *Iskanian* Court held state law precluding enforcement of such class action waivers on the grounds of unconscionability or public policy was preempted by the FAA. (*Iskanian, supra,* 59 Cal.4th at pp. 359-360.)

The arbitration agreement, however, required the waiver of not only class actions but also "representative actions"; and the

10

employee also sought to bring a representative action under PAGA, which "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state." (*Iskanian*, *supra*, 59 Cal.4th at pp. 378, 360.) An employment agreement compelling the waiver of representative claims under PAGA, the Supreme Court held, "is contrary to public policy and unenforceable as a matter of state law," and the FAA does not preempt such law. (*Id*. at pp. 360, 384.)

The Court rejected the argument the FAA preempts the state law rule against PAGA waivers because "the FAA aims to ensure an efficient forum for the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state [LWDA]." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) Relying on the statutory text and the legislative history of the FAA, the Court stated, "There is no indication that the FAA was intended to govern disputes between the government in its law enforcement capacity and private individuals." (*Id*. at p. 385.) "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*, which alleges directly or through its agents—either the [LWDA] or aggrieved employees— that the employer has violated the Labor Code. . . . '[E]*very* PAGA action, whether seeking penalties for Labor Code violations as to only one aggrieved employee—the plaintiff bringing the action—or as to other employees as well, is a representative action on behalf of the state.'"

11

Applying the rationale of *Iskanian* in *ZB, N.A. v. Superior Court*, *supra*, 8 Cal.5th 175, the Supreme Court held an employee's predispute agreement to individually arbitrate claims "is unenforceable where it blocks an employee's PAGA claim from proceeding" (*id.* at p. 198) and, quoting *Iskanian*, held in *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 87, "[t]here is no individual component to a PAGA action because "*every* PAGA action . . . is a representative action on behalf of the state.""

2. *Viking River*

When hired as a sales representative by Viking River Cruises, Angie Moriana agreed to submit any disputes arising out of her employment to arbitration. (*Viking River*, *supra*, 142 S.Ct. at p. 1916.) The parties' agreement provided no dispute could be brought "as a class, collective, or representative PAGA action." (*Ibid.*) As described by the United States Supreme Court, the agreement "also contained a severability clause specifying that if the waiver was found invalid, any class, collective, representative, or PAGA action would presumptively be litigated in court. But under that severability clause, if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.'" (*Ibid.*)

After leaving the company, Moriana sued Viking River alleging a single PAGA cause of action for various Labor Code violations, including a claim that Viking River had failed to pay her final wages in a timely manner and had violated minimum wage, overtime and meal and rest break provisions adversely affecting other employees. (*Viking River*, *supra*, 142 S.Ct. at p. 1916.) Viking River moved to compel arbitration of Moriana's 'individual' PAGA claim—that is, the claim that arose from the

violation she suffered—and to dismiss the balance of her PAGA claim. The trial court denied that motion. Our colleagues in Division Three of this court affirmed, holding that categorical waivers of PAGA standing are contrary to state policy and that a PAGA claim cannot be split into an arbitrable individual claim and nonarbitrable "representative" claim. (*Ibid.*)

Reversing the court of appeal's judgment, the United States Supreme Court first posited that the word "representative" when used in connection with a PAGA action has two meanings. (*Viking River*, *supra*, 142 S.Ct. at p. 1916.) "In the first sense, PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State. But PAGA claims are also called 'representative' when they are predicated on code violations sustained by other employees. In the first sense, "*every* PAGA action is . . . representative" and '[t]here is no individual component to a PAGA action,' [citation], because every PAGA claim is asserted in a representative capacity. But when the word 'representative' is used in the second way, it makes sense to distinguish 'individual' PAGA claims, which are premised on Labor Code violations actually sustained by the plaintiff, from 'representative' (or perhaps quasi-representative) PAGA claims arising out of events involving other employees." (*Ibid.*)

Using the term "individual PAGA claim" to refer to claims based on Labor Code violations allegedly suffered by the plaintiff, the Supreme Court explained the *Iskanian* rule, by prohibiting bifurcation of a PAGA action into individual and representative claims, precluded parties from agreeing to arbitrate claims based on personally sustained violations: An employer was either compelled to withhold the individual claim from arbitration or

13

coerced into accepting arbitration of all other PAGA claims in the same arbitral proceeding. That restriction on the freedom of the parties to determine the issues subject to arbitration and the rules by which they will arbitrate, the Supreme Court held, violated the FAA. Accordingly, "the FAA preempts the rule of *Iskanian* insofar as it precludes division of PAGA actions into individual and non-individual claims through an agreement to arbitrate." (*Viking River, supra*, 142 S.Ct. at p. 1924.)

Significantly, however, the Supreme Court also held the rule of *Iskanian* invalidating wholesale waivers of PAGA claims (that is, agreements that purported to bar an employee from bringing a representative claim in any forum) was not preempted by the FAA. (*Id.* at pp. 1924-1925.) Accordingly, that portion of the Viking River arbitration agreement remained unenforceable.

Turning its focus to the severability provision in the arbitration agreement, the Supreme Court concluded, "[T]he severability clause in the agreement provides that if the waiver provision is invalid in some respect, any 'portion' of the waiver that remains valid must still be 'enforced in arbitration.' Based on this clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim. The lower courts refused to do so based on the rule that PAGA actions cannot be divided into individual and non-individual claims. Under our holding, that rule is preempted, so Viking is entitled to compel arbitration of Moriana's individual claim." (*Id.* at p. 1925.)[5]

---

[5] Section 12.2(k) of Handy's Service Professional Agreement contains a similar severability provision, stating, if any portion of the Representative Action Waiver is deemed unenforceable, the

14

3. *The Parties' Agreement Did Not Provide for Arbitration of Pote's PAGA Claims Seeking Recovery of Civil Penalties*

Under *Viking River*, if a plaintiff files a PAGA action based in part on Labor Code violations that he or she has actually suffered, the plaintiff can be compelled to arbitrate the "individual PAGA claim" if the parties' agreement to arbitrate includes such claims. That was the situation in *Viking River*, where Moriana had agreed to arbitrate on an individual basis any dispute arising out of her employment, a broad agreement that included her individual PAGA claim once the Supreme Court held *Iskanian*'s anti-divisibility rule was preempted by the FAA and applied the severability clause to the invalid provision waiving the right to bring a representative action.

Here, in contrast, although Pote generally agreed all disputes with Handy would be resolved in binding arbitration on an individual basis, the April 9 and October 26, 2018 iterations of the Service Professional Agreement prefaced this otherwise all-encompassing provision by stating, "Except as expressly provided below . . . ." And "expressly provided below" in section 12.2(c), the Representative Action Waiver, was a clear statement in both iterations of the agreement, albeit in slightly different language, that an arbitrator had no authority to arbitrate representative actions, and that section expressly distinguished as arbitrable on an individual basis claims for underpaid wages from representative claims for civil penalties. Indeed, Handy in the trial court requested as alternative relief that, if the court were to decline to enforce the Representative Action Waiver in its

portion that is valid and enforceable "shall be enforced in arbitration."

entirety,[6] the court should sever and stay Pote's representative claims for PAGA civil penalties—which Handy expressly contrasted with claims for victim-specific underpaid wages suffered by Pote and other aggrieved employees—until the completion of arbitration of any victim-specific claims.

Pote has expressly and repeatedly stated he is no longer asserting any claim for unpaid (and, necessarily, underpaid) wages on behalf of himself or any other aggrieved employee. He seeks only civil penalties under PAGA. Unlike in *Viking River*, here there is no agreement by Pote and Handy to arbitrate those remaining claims for civil penalties, or any portion of them, on any basis. (See *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 [""a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit""]; see also *Viking River*, *supra*, 142 S.Ct. at p. 1918 [the first principle of FAA jurisprudence is that arbitration is strictly a matter of consent].)[7] Because there is nothing to arbitrate, Handy's petition to compel arbitration was properly denied.

---

[6] As discussed, the United States Supreme Court in *Viking River*, *supra*, 142 S.Ct. 1906 did not abrogate existing state law regarding the unenforceability under California public policy of purported waivers of the right to bring a representative action in any forum, such as the Representative Action Waiver in the case at bar.

[7] Whether an arbitration agreement applies to a controversy is a question of law to which we apply our independent judgment in the absence of conflicting extrinsic evidence. (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687; see *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 497; *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 12.)

Pointing to the arbitration opt-out provision (section 12.2 (i)) in the Service Professional Agreement, Handy also argues Pote was not compelled as a condition of his employment to accept Handy's arbitration provision. That argument is similarly unavailing: As discussed, the agreement did not provide for arbitration of Pote's PAGA civil penalties claims. No opt out was required.

Moreover, even if there is merit to Handy's contention that the Representative Action Waiver is enforceable in its entirety, precluding Pote's claims for PAGA civil penalties,[8] wholesale enforcement of the waiver would not, by its terms, require individual arbitration of representative actions falling within its scope. Enforcing the waiver in its entirety would bar Pote's entire action, which asserts only PAGA claims on behalf of the State as the real party in interest. (See *Viking River, supra*, 142 S.Ct. at pp. 1914, 1916; *Kim v. Reins International California, Inc., supra*, 9 Cal.5th at pp. 86-87). Nothing would be left to arbitrate.

---

[8] As discussed, Handy has argued the Representative Action Waiver in its October 26, 2018 arbitration agreement with Pote was a "postdispute" waiver of the right to bring a PAGA action and thus enforceable because *Iskanian*'s holding was limited to predispute waivers.

## DISPOSITION

The order denying Handy's motion to compel arbitration is affirmed.  The parties are to bear their own costs on appeal.


PERLUSS, P. J.


We concur:



SEGAL, J.



FEUER, J.